We'll hear the next case, REACH Music. Thank you, Your Honors, and may it please the Court, Elliot Beane for the Appellant Protunes. I just have some quite short remarks to make, and primarily about the different amounts of clarity of the three rulings at issue in this case. I'd like to begin with the ruling, I think it's clear, the clearest of all, involves the ruling under the Copyright Act. And on the pages of the appendix 161 and 162, the judge starts out by talking about how an award of attorney's fees is appropriate to promote the purposes of the Copyright Act. A fee award will discourage bad faith attempts to undercut contractual transfers of property rights. How the Court has already determined that, in this case, the REACH parties were aware of the assignment away of the copyrights in question, and yet at the bottom of the page that they alleged in their complaint that they did, in fact, possess all the copyrights in question. And the Court goes on to say, bad faith in the conduct of the litigation is a valid ground for an award of fees. And finally, at the end of that paragraph, when a rightful copyright owner defends itself from a bad faith claim that it has infringed copyrights it actually owns, an award of fees is appropriate. This is such a case, end quote. So in preparing for argument, what jumped out at me was this question. How did the Court know this? How did the Court know that this was such a case, that there was a bad faith bringing of a lawsuit and so forth? The only way it knew it was the tort counterclaim for interference with contract that went to trial and established all these facts, at the end of which the Court rendered its conclusions orally about that this had been a bad faith lawsuit, it was malicious, it was egregious, and so forth. And yet, in this Copyright Act ruling, the Court never gives the tort counterclaim any credit whatsoever in producing this knowledge, these findings. Was the tort evidence completely separate from the copyright violation? I'm sorry? Was the evidence of the tort violation completely separate from the evidence of the copyright violation? No, it was... Yes. Isn't there considerable overlap? The tort claim involved the copyrights and who owned them and what did the reach parties know? You understand my question, though, right? I don't. Interference with a contractual relationship. So the evidence that was presented in the bench trial, wasn't there considerable overlap with what would have been the copyright claims as well, as well as the contract claims? Oh, yes. Yeah, I imagine. So what do you say the judge didn't know about it, then? What would not have been involved in a pure copyright trial, just what would have been involved was simply who owned the copyrights and the nature of the contract, looking at it objectively. And the difference is that at this bench trial, not only was that involved, but the main issue was what the reach parties knew about the contract in 2007, when they took the assignment, and then when they filed the lawsuit, what was their state of mind? What was their knowledge? That was really the critical issue. In fact, there were expert witnesses on that subject, looking to the common, what is in the community, what's a common understanding of these contracts. None of that would have been involved had the issue been, as the court described two years ago, had the tort case been solely involved with the copyrights themselves and the contract themselves. Can I just be clear about something? Do you agree that the standard set forth by the First Circuit in InVEST should apply in this case? Sure. I think that's, you know, we argued them. I think it was a well-reasoned decision. And so in that case, so applying that case to this case, at summary judgment, right, the court resolved the copyright issue, and thereafter at bench trial, the issues on tortious interference were not relevant to the copyright claim. I'm trying to think. I mean, the question was, was there a ... I mean, the bench trial was concerned, as you said, with Reach's knowledge of Reeve's contractual assignment of his copyright interest, right? And so resolving that issue was not necessary to disposing of the copyright claim. Yes, it's technically correct. And so in that view, didn't the district court correctly decline to award attorney's fees under Section 505 on the tortious interference claim? Well, the quotes that I read at the beginning indicate that compensation of attorneys to the successful party in a copyright claim is very much part of the purposes of the Copyright Act. I mean, that notion is designed, that remedy is designed to deter the kind of conduct we have in this case, and the converse. And so we're giving that whole purpose, sort of second-class or no-class citizenship here in this argument. I mean, that was a part of it. What is it that you had to prove in connection with the tortious interference with contract counterclaim? That there was a contract, that there was knowledge of the contract, that there was interference with it and damages resulted from it. That it was more specifically that Reach was aware of this covenant not to sue. Is that right? That was included. It was not the only element of it. The way the counterclaim went and the judge's findings at the bench trial indicated that counsel has tried to- And would you explain to me then how those elements that you just outlined relate to the enforceability or validity of the copyright interests, the property interests? Explain that to me. I missed the first part. I'm sorry, Your Honor. Would you explain to me how the elements that you described in connection with this tortious interference claim, how the tortious interference claim relating to the contract and the covenant not to sue relate to the validity or enforceability of Protoon's copyright interests, its property interests? It had to establish that there was a knowing interference with the contract. So we had to show that, in fact, we did- Did you say that the contract is the property interest? No, the tort related to copyright insofar as to prove our tortious interference claim. We had to show that there was an intentional interference with the contract that did in fact assign the contracts from the original writer to Rush Group Music and then to Protoon's. It was only asked of the covenant not to sue, right? That's what it says in the summary judgment decision. Knowledge of that particular aspect of the contract- But that never- You said you cannot sue. You're limited to the damages here in this agreement. That statement- So that's what Judge Forrest said. I need evidence about that knowledge. Isn't that the only issue? Follow up on what Judge Forrest said? The judge did say that in that context. I'm well aware of that. But that's not what either the counterclaim nor the trial were limited to. The trial, if you look at the judge's own rulings, the trial and the disputed issues at the trial went much beyond the covenant not to sue. Why did you make that objection to Judge Forrest? That is, that she was reading it too narrowly by focusing on the covenant not to sue? I don't know. I don't recall that. In the order of July 19- Both sides saw the knowledge of the contracts themselves as a major issue. Well, we'll hear from the other side on that, but okay. Yeah. Just to be clear, if we go back to the district court's order of July 19, 2016, the court says that it rendered its decision on the basis of the full panoply of the materials that was presented at the appropriate times. Included in those materials were the motions, Prouton's motions for damages, which included the argument that the district court should award Prouton's fees as a sanction for Reeves and reaches bad faith litigation tactics. That was all before the district court. Why shouldn't we just assume that the district court knew that, said that it was all before it, it understood its authorities, including whatever inherent authority it may have had, and simply declined to award fees? This comment was in a totally different context talking about Prouton's motion to reconsider the judgment. This was a very thorough, careful judge, I mean, very detailed opinions. The judge never once mentioned, even in that statement that you just read, Your Honor, never mentioned the inherent power. That was one of the points I was going to make at the outset. I think that the reason for that was the judge's failing to give credit to the whole bad faith litigation aspect of this case, which certainly she was exercised about at the trial when she addressed the ... So if the court had said that this court finds it inappropriate to exercise its inherent authority to sanction Reach and Reeves, on what grounds could you challenge that determination? If she had ... Well ... If she had said that. Said it or meant it, whatever. Well, I think that would have been the same, very similar to what we said in our briefs, that the bad faith instituting of litigation is the classic ground for the inherent power to sanction, and that fact she found, it's not contested on appeal, as we sit here today, or I stand here today, that's settled and conclusive, and I think all the case law makes clear that that is a compelling ground for the sanction under this power. So we would have made that argument. What's interesting is that she didn't mention it ever, and so the question is, do you follow the default appellate disposition, which is to remand, or do you say that the court, on the record, it's pretty clear that the court simply didn't give credit in this case on any of the three issues to the findings that she made? Thank you. Thank you, Your Honors. Good morning, Your Honor. May it please the court. My name is Andrew Bard from Jenner and Block, and I'm here representing Reach Music. I think as you said, Judge Katzmann, the subject relates solely to subjects properly left to the discretion of the trial court. Both the awarding of fees under the court's inherent powers, or under the discretion, and only to be disturbed for manifest abuses of discretion, and the reason for that is obvious, and this case is as good an example of it as any. It's a ten-year history, there are motions, there are . . . the case bounced around from different courts, there was a lot of evidence, there was credibility involved, there was an opportunity for the judge then to try and determine an overall equitable result, and we believe that she did that here. Recognizing . . . Can I ask you, if I might, about the First Circuit's standard, Judge Boudin's standard in invices? Our court has not adopted that standard. Do I read you correctly to say that you find the court's reasoning in the First Circuit appropriate? Well, I think that it's . . . the court's reasoning here is appropriate under every standard. I understand, but I'm asking you about the First Circuit's standard. Well, I think it's consistent with the First Circuit's standard, absolutely. I think it is. I think it's consistent with everything that's been rendered in this circuit as well. So that a party may receive a fee award for a non-copyright claim. Well, I . . . As a matter of just principle, I'm not saying this case. No, I understand, and in fact, there was an award in this case of fees on the breach of contract counterclaim. So Judge Forrest saw herself as empowered to do just what the First Circuit was talking about. And you don't disagree with that? Well, we didn't raise it as a subject of appeal, and we think that the judge . . . I want to get your view. That's why I noticed you didn't . . . Well, I think that what we were trying to do in all candor, Your Honor, was to have some degree of repose here. I mean, frankly, as the pro-tunes parties may be not wittingly reflected at the very end of their reply brief, this case is about punishing reach music. And their metaphor at the end of their reply brief about not being able to punish the arsonist is very, very telling, because that is what this case is about. Judge Forrest read through everything. She clearly liked my client, but felt that he had done something wrong. She leaned towards the pro-tunes side in awarding fees, as Your Honor said, on the breach of contract claim. She reached towards the pro-tunes side in terms of when there was a commingling of awards for both the tortious interference and the contract, even though the contract was basically on the papers and the tortious panoply of other issues. She discounted it only by 10%. There were a lot of things in here that if we really wanted to go to the mats and argue for a remand and argue that there was a mistake, that we had that basis for doing it. You want to end this litigation? We absolutely want to. And as a matter of fact . . . You've abandoned your cross-appeal. Yes, and for that very reason, Your Honor, we have been spending money. And it's very, very clear, not from a lot of different reasons, that the pro-tunes parties don't want to do that. They made a motion . . . It was also that we don't have to endorse or say anything about the First Circuit's decision. No, no, no. And that's why I was perhaps jousting a little bit, because we don't have to take an opinion on what that was. We think Judge Farr's decision went beyond what she needed to do, but at this point, we're not challenging any of it. We want finality. The pro-tunes parties went in after this massive award. I mean, look, the complaint dealing with these claims and with these copyrights alleged an amount in dispute of about $250,000. The way this case was litigated, they're getting $1,000,004. They were unhappy with that. They went back and they wanted more. $350,000 more. Right. And then they wanted the permission to go in and make a new fee application on top of that for the time that they incurred preparing their damages awards, and they said the same thing that they did here. Your Honor, you ignored our application, because in a footnote of our motion, we said to you that we're reserving the right to go back and ask for more money, and Judge Farr said, the fact that I didn't address it doesn't mean I ignored it. I followed your mechanism for how we're going to deal with damages in this case, and I did everything you wanted me to do, and you promised me that this would be a one-shot, in-and-out damages award, and that's all I'm giving you. So the bottom line here is, and frankly, there's even an issue in this case in the fact that they haven't even taken our judgment, which we've been trying to pay, because they think that there's going to be further litigation down the road. This is a party that has believed that once a lawsuit was brought, they were a cottage industry. They could continue to print money. They can continue to make my client liable. My client made a mistake. He was trying to help an indigent, homeless party who was not getting any money. He looked at protunes rightly or wrongly, apparently wrongly, and said, you're exploiting this, and you're not paying royalties to anybody. My client is making no money. Something's wrong here. He brought a case. He was wrong. He's paying $1,000,004 for that mistake. Judge Farr, who sat through everything, said, this is what we're going to award, and we're prepared to live with that. The only other point that I really want to make on this . . . Can I ask you a question? Yes, sure. And that is, how much of an overlap was there at the trial over the covenant not to sue knowledge and the breach of contract that was decided on summary judgment? Well, I think there was . . . the entire story was presented. I think Judge Farr said in her decision, and I forget which of your honors had mentioned it, but that the issue . . . when she granted summary judgment, the issue that remains for trial is the issue of what Reach knew. Okay? What did Reach know about the covenant not to sue? That was the issue that was addressed, and that was the issue . . . if you read her decision after the two-day bench trial, that's the decision that she rendered. That's really the issue that gives rise to these disputed attorney's fees. Is that what you're saying? No, that's not what I'm saying. I'm not saying that that's what gives rise to it. I think . . . No? Well, yes, in terms of whether the tortious interference is compensable or not, absolutely, and that's what Judge Farr has said. She said, we have resolved everything. We have resolved that you own the copyrights. We have resolved that there was a breach of contract. You are entitled to a copyright recovery, which she awarded ultimately, against both Reeves and Reach. They could have gotten the same exact award that they got now if they had done it after the summary judgment was granted, but they wanted to punish Reach. They wanted to get more money, and they felt they had nothing to lose. They were playing with the House's money. Everything that they spent would be paid by our client at the end of the day. I think that part of the purpose why you have these rules of deference to trial court's discretions is, at some point, the trial court goes, okay, enough. I'm giving you everything. I'm giving you full recovery. I'm not discounting things. I'm giving you a 5% discount for block billing. We've looked at the cases. Block billing discounts can be 30 or 40 or 50%. I'm doing it 5%. But once you get to the tortious interference claim, that's a claim that only relates to what Reach knew. I don't believe that implicates the purpose of the Copyright Act, and in terms of the inherent power. We don't have to get into whether it was necessary or not. We don't have to get into the Investigative First Circuit. No. No. No. Absolutely not. And the only other thing that I really want to mention, to your honors, is that a lot of this brief, a lot of Protoon's appeal is premised on findings of, he brought the case in bad faith. That's an element of the tortious interference claim. So in order to prevail on that, that's what you have to find. And basically, the implication of Protoon's appellate argument is that by proving that, you're entitled in addition to inherent fee sanctions and punitive damages and everything else, that this all gets wrapped in. So that even though, if you win on a tortious interference claim under New York law, you're not entitled to attorney's fees. As a matter of law, if you do it in a federal court, the inherent powers trumps that federal law and you get the attorney's fees anyway, which is certainly not what anybody intended and is clearly the wrong result. I think I'm just going to close with Mr. Bean's comment about what a careful judge this was. And both of us have the ability to say that since neither one of us was involved in the trial court. But, you know, we've dealt with Judge Farr's. She spent with a lot of detail. She got to the bottom of the issues. She rendered an overall result that she believed was fair. She didn't invoke inherent powers because she didn't feel that it was appropriate or necessary to do that. And she was the arbiter of that because what do the inherent powers do? They are a mechanism by which a trial court can control the operations that occur in its presence in its courtroom. And they shouldn't be respectfully second-guessed by this court. Thank you, Your Honor. Thank you. Thank you. Just very briefly, on the last point, counsel was equating that every interference with contract claim under New York law is going to turn into a sanction case, so we're going to destroy New York's, you know, American rule. That's just not so. Not every interference with contract claim involves. In fact, I suspect few of them do, the bringing of a lawsuit in bad faith, as we have in this case. That's why we seek the inherent sanction, and that's why we're talking about the Copyright Act as justification. In this case, the claim was closely related to a copyright act, and this claim, it did involve the bad faith bringing of a lawsuit. Now, we heard the story that I heard throughout the briefs also that Protoons, you know, was just here thinking that all of their litigation conduct was going to be paid for, and we're going to bury you in fees and all this stuff. Well, there's no factual basis for that claim, and I'm not going to repeat it here, but my reply brief pointed out very clearly that that simply is a story, and it's not accurate, and I don't think it should be brought up here either. Other than that, I think there's nothing wrong with a party, in this case, when you don't have a public prosecutor who's going to bring claims against or reach parties or people like this for bringing bad faith lawsuits. We rely on the victim to bring this kind of claim. It took a lot of money, about 30% of the total fee award that my client requested was for bringing this interference counterclaim. It was very complicated. It's the only claim that went to trial. And I say, looking at it from hindsight, I'm glad it went to trial, because it proved that this is a serious case, this bad faith bringing of a lawsuit. Judge Forrest called it an egregious case. So I think we should not be poo-pooing that, and on the contrary, I think this Court should take that and give that the credit in the remedy that Judge Forrest did not. So, other than that, thank you for your attention. Thank you both for your arguments. The Court will reserve decision.